UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CLIFTON G. GREEN and
TINA GREEN,

Plaintiffs,

v. Case No. 8:26-cv-1613-VMC-LSG

RESTAURANT TECHNOLOGIES,
INC., a foreign for-profit
corporation,

Defendant.
_______________________________/

**ORDER**

This matter is before the Court on consideration of Defendant Restaurant Technologies, Inc.'s Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. # 25), filed on July 10, 2026. Plaintiffs responded on July 31, 2026. (Doc. # 27). For the reasons that follow, the Motion is granted in part and denied in part.

## I. Background

In this action, Plaintiff Clifton G. Green brings claims against his former employer for violations of the Family and Medical Leave Act (the "FMLA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), and the Americans with Disabilities Act (the "ADA"). (Doc. # 16). He also brings "Florida common-law tort claims," on account of which his spouse, Plaintiff

Tina Green, raises a derivative common-law claim for loss of consortium. (Id. at 20).

Mr. Green, an African American man, worked for Restaurant Technologies, Inc. ("RTI") as a commercial truck driver "from in or about the summer of 2022 until his unlawful termination on April 4, 2025." (Id. at 1-2). He maintains that he was a satisfactory employee, "receiv[ing] positive performance reviews and merit-based pay increases" throughout his employment. (Id. at 2, 5). Prior to December 1, 2024, Mr. Green "had never received a written warning of impending termination" or "been the subject of formal progressive discipline." (Id. at 6). Rather, he insists that RTI "entrusted [him] with additional responsibilities that reflected its confidence in his abilities." (Id. at 5).

"On December 1, 2024, while operating an RTI company truck in the course and scope of his employment and while making a scheduled customer stop, Mr. Green's vehicle was struck from behind by a third-party SUV." (Id. at 7). "Mr. Green bore no fault for the accident," and he "immediately reported the accident to RTI." (Id.). As a result, Mr. Green sustained a "lumbar spine injury with associated radiculopathy and sciatica" that "substantially limited one or more of his major life activities." (Id. at 4, 7).

Following the collision, Mr. Green was "placed on documented work restrictions" by his physician, which included "no driving of company vehicles." (Id. at 7). But Plaintiffs emphasize that this "driving restriction was temporary," and "[w]ith a finite period of medical leave and continued treatment, Mr. Green was reasonably expected to recover and to return to the essential functions of his position." (Id. at 7-8).

After Mr. Green submitted an eligibility certification on March 24, 2025, "RTI placed Mr. Green on FMLA leave." (Id. at 8). Plaintiffs allege that he was thereafter subjected to "a sudden and material increase in scrutiny . . . that was not applied to similarly situated non-Black drivers or to drivers who had not recently exercised . . . FMLA rights." (Id. at 2, 8-11). In one example, his direct supervisor, Austin Cobb, "made statements to other employees criticizing Mr. Green for using FMLA leave 'too much' and for missing 'too many days,' thereby evidencing direct animus against Mr. Green for his exercise of FMLA-protected leave." (Id. at 9).

Plaintiffs claim Mr. Green was "targeted" not only due to his "use of FMLA leave," but also because of his race and disability. (Id. at 8-10). An unidentified supervisor purportedly stated that "the company 'hired too many' Black

employees, using a racial slur to refer to them," and said "we gotta get rid of them." (Id. at 9). Additionally, "around the time of Mr. Green's termination, [Mr.] Cobb stated, in substance, 'one down, two to go,' in reference to Mr. Green and to other Black employees of RTI whom Mr. Cobb intended to target for termination." (Id. at 8). Mr. Green allegedly "complained to RTI management and human resources that he was being . . . subjected to . . . disparate treatment because of his race," as well as "complained internally about his treatment relating to his disability," prior to his dismissal. (Id. at 16, 18).

The amended complaint highlights Mr. Cobb, and an individual identified as "E.J.," as having "participated in, influenced, or provided the asserted factual basis for" Mr. Green's termination. (Id. at 9). Namely, the pair "created, compiled, and circulated within RTI a false record of safety infractions and disciplinary history attributed to Mr. Green," despite "knowing that record to be false or with reckless disregard for its truth." (Id. at 11). This record consisted of alerts generated by an "in-cab driver-monitoring telematics system" ("Samsara") that RTI "knew suffer[ed] from material reliability defects." (Id. at 6). Nevertheless, "similarly situated employees outside Mr. Green's protected

classes, who incurred similar or more frequent Samsara alerts and other alleged safety infractions, were not subjected to comparable discipline or termination." (Id. at 10).

On April 4, 2025, "while Mr. Green remained on FMLA leave, . . . RTI terminated [his] employment." (Id.). "RTI never restored Mr. Green to the position he held when his leave commenced or to an equivalent position." (Id.). Plaintiffs identify Mike Reese, RTI's "Chief People Officer," as a decisionmaker in the termination. (Id.).

At the time of the dismissal, RTI did not assert any "disciplinary justifications." (Id. at 9). Only later, on February 17, 2026, "did RTI assert for the first time that Mr. Green had purportedly accumulated '16 safety infractions in 2024' and had been placed on a 'final written warning' in November 2024," with the "triggering event" for his termination being an "alleged seatbelt violation in March 2025." (Id. at 9-10). Plaintiffs insist that "Mr. Green's personnel file, as produced by RTI, does not contain documentation supporting the existence, severity, or progressive-discipline character" of such infractions. (Id.).

Plaintiffs initiated this action in state court on April 28, 2026. (Doc. # 1-1). RTI removed the case to this Court on May 29, 2026, (Doc. # 1), and then moved to dismiss the

initial complaint on June 5, 2026, (Doc. # 7). This Court subsequently severed and remanded one count of that complaint for lack of subject-matter jurisdiction. (Doc. # 10).

Plaintiffs filed an amended complaint on June 26, 2026, with the "[c]ount numbering . . . preserved for continuity with the record." (Doc. # 16). The amended complaint contains eight causes of action as to Mr. Green: "FMLA Interference" (Count I), "FMLA Retaliation" (Count II), "Race Discrimination" under Title VII (Count III), "Retaliation" under Title VII (Count IV), "Disability Discrimination" under the ADA (Count V), and "Retaliation" under the ADA (Count VI), as well as claims for negligent supervision and retention (Count VIII) and defamation (Count X) under Florida common law. (Id.). It alleges an additional cause of action as to Mrs. Green for loss of consortium (Count IX). (Id. at 20).

Now, RTI moves to dismiss the amended complaint for failure to state a claim. (Doc. # 25). Plaintiffs have responded (Doc. # 27), and the Motion is ripe for review.

## II. **Legal Standard**

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth

Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, the Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Hum. Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). But,

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The Court must limit its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004), abrogated on other grounds by Twombly, 550 U.S. 544.

## III. Analysis

### A. FMLA Interference

To state a claim of FMLA interference, an employee need only plausibly allege "that he was entitled to the benefit

denied." Strickland v. Water Works & Sewer Bd. of City of Birmingham, 239 F.3d 1199, 1207 (11th Cir. 2001). "Benefits under the FMLA include both taking leave and being reinstated following a leave period." Diamond v. Hospice of Fla. Keys, Inc., 677 F. App'x 586, 592 (11th Cir. 2017); see also Strickland, 239 F.3d at 1208 ("[A]n employee returning from covered leave is entitled to be restored to his former position or its equivalent." (citations omitted)).

Generally, an employee need not allege that their employer "intended to deny" the benefit. Strickland, 239 F.3d at 1208. However, "[w]here the claim is based on an employee's termination," as Mr. Green's claim is here, "an employer may affirmatively defend against the claim by establishing that it would have terminated the employee regardless of [his] request for or use of FMLA leave." Batson v. Salvation Army, 897 F.3d 1320, 1331 (11th Cir. 2018).

RTI argues that "[t]his claim fails as a matter of law because Mr. Green does not allege that he was denied any FMLA benefit, and his own Complaint concedes that RTI terminated his employment for reasons unrelated to the exercise of his FMLA rights." (Doc. # 25 at 7). Not so. RTI placed Mr. Green on FMLA leave after he provided "proper notice" of his need and eligibility for such leave. (Doc. # 16 at 8). Mr. Green

thereby had a right to be "reinstated following a leave period." Diamond, 677 F. App'x at 592. Yet, Plaintiffs allege that "while Mr. Green remained on FMLA leave, . . . RTI terminated [his] employment." (Doc. # 16 at 10).

While Plaintiffs acknowledge that RTI eventually cited "16 safety infractions in 2024" and an "alleged seatbelt violation in March 2025" as triggering Mr. Green's dismissal, they contend that this justification is pretextual. (Id. at 9–10, 13). Allegedly, RTI did not assert any "disciplinary justifications" when Mr. Green was terminated, nor did his file "contain documentation supporting" their existence. (Id.). Only ten months later "did RTI assert for the first time" that these violations prompted his dismissal. (Id.).

The amended complaint does not concede that RTI "would have terminated [Mr. Green] regardless of [his] request for or use of FMLA leave." Batson, 897 F.3d at 1331. To the contrary, it provides factual allegations that, taken as true, suggest RTI unlawfully interfered with Mr. Green's right to be restored to his position. Accordingly, the Motion is denied as to Count I.

**B. FMLA Retaliation**

Under the FMLA, a claim for retaliation exists where "an employee asserts that his employer discriminated against him

because he engaged in activity protected by the Act." Strickland, 239 F.3d at 1206 (citations omitted). To state a claim of FMLA retaliation, an employee must therefore plausibly allege a "causal connection" between protected conduct and an adverse employment action. Krutzig v. Pulte Home Corp., 602 F.3d 1231, 1234 (11th Cir. 2010).

A causal connection generally exists where "the protected activity and adverse action were not wholly unrelated," which is true where "the decision maker was aware of the protected conduct at the time of the adverse employment action." Id. at 1234 (internal quotation marks omitted) (quoting Brungart v. Bellsouth Telecomms., Inc., 231 F.3d 791, 799 (11th Cir. 2000)). A plaintiff can plausibly support retaliation by alleging "close temporal proximity" between a protected activity and their termination. Brungart, 231 F.3d at 799.

Here, Plaintiffs have stated a plausible claim of FMLA retaliation. Mr. Green's "request for and use of FMLA leave" was a statutorily protected activity, of which "RTI was at all material times aware." (Doc. # 16 at 8). Likewise, Mr. Green suffered adverse employment actions, including a "campaign of pretextual discipline, heightened scrutiny, and ultimately discharge." (Id. at 2).

In support of a "causal connection between the two," Krutzig, 602 F.3d at 1234, Plaintiffs allege that individuals who "exercised supervisory authority over Mr. Green," including his direct supervisor, "made statements to other employees criticizing Mr. Green for using FMLA leave 'too much' and for missing 'too many days,' thereby evidencing direct animus." (Doc. # 16 at 9). Plaintiffs do not specifically allege that Mr. Reese, who the amended complaint identifies as a decisionmaker in Mr. Green's dismissal, acted with "retaliatory animus," but they do note that the decision to terminate occurred "while Mr. Green remained on FMLA leave." (Id. at 10).

Additionally, Plaintiffs claim that "RTI subjected Mr. Green to a sudden and material increase in scrutiny" only after his exercise of FMLA rights, and that he was terminated a mere eleven days after submitting a form certifying his eligibility for FMLA leave. (Id. at 9-10). This "close temporal proximity" between Mr. Green's exercise of protected conduct and his termination is sufficient to plead the requisite causal connection. Brungart, 231 F.3d at 799. RTI argues the alleged March 2025 seatbelt violation was an "intervening act of misconduct [that] breaks the causal chain." (Doc. # 25 at 9). But Plaintiffs plausibly contend

throughout the amended complaint that this asserted justification for Mr. Green's termination is mere pretext for unlawful retaliation. (Doc. # 16 at 9-10, 14).

Taking all allegations in the light most favorable to Plaintiffs, the amended complaint is sufficient for the pleadings stage. The Motion is denied as to Count II.

**C. Race Discrimination**

"Title VII provides that it is unlawful for an employer to discriminate against an employee because of the employee's race." Surtain v. Hamlin Terrace Found., 789 F.3d 1239, 1245-46 (11th Cir. 2015) (citations omitted). "To state a race-discrimination claim under Title VII, a complaint need only provide enough factual matter (taken as true) to suggest intentional race discrimination." Id. at 1246 (citations and internal quotation marks omitted). A complaint "need not allege facts sufficient to make out a classic McDonnell Douglas prima facie case." Id. (citations omitted).

When favoring Plaintiffs with all reasonable inferences, the amended complaint provides enough factual allegations to suggest intentional race discrimination. RTI subjected Mr. Green to heightened scrutiny "not applied to similarly situated non-Black drivers." (Doc. # 16 at 9). "[A]round the time of Mr. Green's termination," his direct supervisor

"stated, in substance, 'one down, two to go,' in reference to Mr. Green and to other Black employees" that he intended to target. (Id. at 8). This same supervisor is also identified as "participat[ing] in, influenc[ing], or provid[ing] the asserted factual basis" for the decision to dismiss Mr. Green, namely by encouraging the "selective enforcement" of a system that RTI knew to be unreliable. (Id. at 6, 9). Another unidentified supervisor allegedly used a racial slur, and said that, because "the company 'hired too many' Black employees," "we gotta get rid of them." (Id. at 9).

RTI argues that Plaintiffs "plead no facts explaining how" these supervisors "caused the decision" of Mr. Reese, who is separately identified as a decisionmaker as to Mr. Green's termination. (Doc. # 25 at 11). However, Plaintiffs allege that RTI itself has cited the "false record of safety infractions," which was "created, compiled, and circulated within RTI" by Mr. Cobb and E.J., as contributing to Mr. Green's termination. (Doc. # 16 at 9-11). At the pleadings stage, this is sufficient to plausibly state a claim.

RTI's argument that dismissal is further warranted because the amended complaint "does not identify any comparator by name, race, position, supervisor, infraction history, or disciplinary outcome," (Doc. # 25 at 12), fails

for much the same reason. Plaintiffs "need not allege facts sufficient to make out a classic McDonnell Douglas prima facie case" at this juncture. Surtain, 789 F.3d at 1246 (citations omitted). Even to the extent Plaintiffs' allegations concerning similarly situated comparators were insufficient though, "comparator evidence is not the only means of establishing discrimination under Eleventh Circuit precedent." Alvarez v. Lakeland Area Mass Transit Dist., 406 F. Supp. 3d 1348, 1354 (M.D. Fla. 2019).

The Motion is denied as to Count III.

**D. Title VII Retaliation**

Title VII "prohibits retaliation when an employee 'oppos[es] any practice made an unlawful employment practice by [Title VII]' or 'has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing.'" Howard v. Walgreen Co., 605 F.3d 1239, 1244 (11th Cir. 2010) (alteration in original) (citation omitted). As under the FMLA, a plaintiff must plausibly plead a causal connection between statutorily protected conduct and an adverse employment action. Id. Plaintiffs "need not allege a prima facie case under McDonnell Douglas" to "withstand a motion to dismiss," but the amended complaint still must provide "enough factual material" to

plead a plausible claim of retaliation. Smith v. Pepsi Bottling Grp., No. 24-11597, 2026 WL 937070, at *6 (11th Cir. Apr. 7, 2026).

RTI argues that Plaintiffs have not properly alleged that Mr. Green engaged in protected activity, or that a causal connection exists between any protected activity and his termination. (Doc. # 25 at 12–13). The Court disagrees as to the latter. Plaintiffs plead causation on the basis of "the close timing between [Mr. Green's] complaints and his discharge, RTI's knowledge of those complaints, and the same evidence of discriminatory animus alleged above." (Doc. # 16 at 16). For the reasons already discussed, this allegation of "close temporal proximity" is sufficient to raise a plausible inference of causation. Brungart, 231 F.3d at 799. The Court agrees with RTI as to the absence of a protected activity, however.

Plaintiffs broadly state that Mr. Green "complained to RTI management and human resources that he was being singled out and subjected to heightened scrutiny, pretextual discipline, and disparate treatment because of his race." (Doc. # 16 at 16). This vague allegation is insufficient to plead a protected activity. See Wester v. Datex, Inc., No. 8:20-cv-1785-VMC-SPF, 2020 WL 6203530, at *3 (M.D. Fla. Oct.

22, 2020) (dismissing a retaliation claim where "[n]o allegation [was] made regarding the number of complaints, the dates the complaints were made, or the process used to submit the complaints").

Because Plaintiffs could potentially cure the deficiencies in this claim by providing further details, Count VI is dismissed with leave to amend.

**E. Disability Discrimination**

"The ADA prohibits discrimination by an employer 'against a qualified individual on the basis of a disability' in any of the 'terms, conditions, [or] privileges of employment.'" Mazzeo v. Color Resols. Int'l, LLC, 746 F.3d 1264, 1267 (11th Cir. 2014) (alteration in original) (citation omitted). A "qualified individual" is one who, "with or without reasonable accommodation, can perform the essential functions of the employment position." Id. at 1267-68 (citation omitted); see also Wood v. Green, 323 F.3d 1309, 1314 (11th Cir. 2003) ("The ADA covers people who can perform the essential functions of their jobs presently or in the immediate future.").

A plaintiff may plausibly allege "he was discriminated against because of the disability" by pleading that "an employer failed to make reasonable accommodations" for his

disability. Lowmack v. Am. Air Conditioning & Heating Sols., LLC, No. 8:21-cv-1310-KKM-JSS, 2022 WL 1321385, at *5 (M.D. Fla. May 3, 2022) (citations omitted). But "[t]he employer's duty to provide a reasonable accommodation is not triggered unless the plaintiff makes a specific demand for an accommodation." Id. (quoting Bagwell v. Morgan Cnty. Comm'n, 676 F. App'x 863, 866 (11th Cir. 2017)).

"[A]n employee has a 'disability' under the ADA when that employee actually has, or is perceived as having, an impairment that is not transitory and minor." EEOC v. STME, LLC, 938 F.3d 1305, 1314 (11th Cir. 2019). To the extent RTI contends that Mr. Green was not disabled because it did not regard him as being so, this argument fails. (Doc. # 25 at 15-16). Plaintiffs properly allege that, following the collision on December 1, 2024, Mr. Green suffered "physical impairment" that "substantially limited one or more of his major life activities," including walking, lifting and bending. (Doc. # 16 at 4, 7). Thus, Plaintiffs plead that Mr. Green had a disability at the time of his termination. Mazzeo, 746 F.3d at 1270 n.4.

RTI further argues that Plaintiffs' claim fails because "Mr. Green cannot establish that he was a 'qualified individual' capable of performing the essential functions of

his position given his own admitted physical restrictions," and because Mr. Green "does not establish a causal connection between his alleged disability and any adverse employment action." (Doc. # 25 at 14, 16).

Regarding Mr. Green's status as a qualified individual, the amended complaint concedes that "[t]he essential functions of Mr. Green's position as a commercial driver included the safe operation of company vehicles and related lifting and material-handling tasks." (Doc. # 16 at 17). After the accident on December 1, 2024, Mr. Green was "placed on documented work restrictions" that limited his ability to perform these essential functions, including "no driving of company vehicles." (Id. at 7, 17). But, as RTI acknowledges, the amended complaint also "alleges that Mr. Green's no driving and lifting restrictions were temporary and that he was expected to recover." (Doc. # 25 at 15).

Plaintiffs assert that "[w]ith a finite period of medical leave and continued treatment," Mr. Green could "return to the essential functions of his position." (Doc. # 16 at 7-8). Alternatively, Plaintiffs allege that, with accommodations such as "light duty" or "reassignment to a vacant non-driving position, Mr. Green could perform the essential functions of his employment." (Id. at 17). Taking

these allegations as true, Plaintiffs have plausibly established that Mr. Green was a qualified individual capable of returning to the essential functions of his position. See Wood, 323 F.3d at 1314 (distinguishing, for purposes of determining whether plaintiff is a qualified individual, a finite leave of absence from a request for indefinite leave).

Regarding causation, RTI argues Plaintiffs do not "sufficiently plead that RTI held a disability-based discriminatory animus toward [Mr. Green] that led to his termination of employment." (Doc. # 25 at 16). Likewise, RTI contends that Plaintiffs' "failure-to-accommodate theory fails" because the amended complaint "does not allege that Mr. Green ever requested a specific accommodation or that RTI refused to discuss one." (Id.). The Court disagrees as to the former and agrees as to the latter.

Plaintiffs sufficiently allege, for the motion to dismiss stage, that Mr. Green was discriminated against due to his disability, culminating in his being discharged. The amended complaint compares Mr. Green's treatment as a valued employee prior to the incident on December 1, 2024, with the "disability-based discriminatory animus" that he experienced after notifying RTI of his disability and corresponding need for medical leave. (Doc. # 16 at 5, 8-9). Namely, "RTI

subjected Mr. Green to a sudden and material increase in scrutiny" after his injury, and "similarly situated employees outside Mr. Green's protected classes . . . were not subjected to comparable discipline or termination." (Id. at 8-10).

Although RTI disclaims discriminatory animus, Plaintiffs insist the alternative reasons cited are mere pretext, and do not "justify the termination of an otherwise satisfactorily performing employee with a documented disability." (Id. at 10). This is sufficient for the pleadings stage.

The Court agrees, however, that the amended complaint insufficiently alleges that Mr. Green requested an accommodation. (Doc. # 25 at 16). While Plaintiffs claim that "Mr. Green requested accommodation in the form of medical leave and work restrictions arising from his December 1, 2024 injury," they concede that RTI and Mr. Green did not discuss "any accommodation that would permit his return to work." (Doc. # 16 at 17-18).

To trigger RTI's duty to provide a reasonable accommodation, Mr. Green needed to "make[] a specific demand." Bagwell, 676 F. App'x at 866. The amended complaint notes that "Mr. Green was placed on documented work restrictions," (Id. at 7), but without a corresponding demand, RTI's duty to identify and provide reasonable

accommodations was not triggered. Lowmack, 2022 WL 1321385, at *5. Mr. Green's submission of a form certifying his eligibility for FMLA leave is also insufficient because such a request is not an accommodation under the ADA. Id. (citing Gilliard v. Ga. Dep't of Corr., 500 F. App'x 860, 864 (11th Cir. 2012)).

Thus, to the extent it contains a failure-to-accommodate claim, Count V is dismissed without prejudice. Plaintiffs may amend this claim, if they can do so consistent with Rule 11.

**F. ADA Retaliation**

As under Title VII, a claim of retaliation under the ADA requires a causal link between statutorily protected expression and an adverse employment action. Hughes v. Wal-Mart Stores E., LP, 846 F. App'x 854, 857 (11th Cir. 2021). "An employee participates in a protected activity when []he makes 'a request for a reasonable accommodation.'" Id. (citation omitted).

Here, RTI argues that "[t]his claim fails because Mr. Green has not identified what specific protected activity he engaged in." (Doc. # 25 at 17). Plaintiffs identify two: Mr. Green "request[ing] a reasonable accommodation for his disability," in the form of medical leave, and "complain[ing] internally about his treatment relating to his disability."

(Doc. # 16 at 18). However, neither is sufficient as pled to plausibly state a claim of ADA retaliation.

Plaintiffs allege that "Mr. Green requested accommodation in the form of medical leave and work restrictions arising from his December 1, 2024 injury." (Id. at 18). For the reasons already discussed, even when favoring Plaintiffs with all reasonable inferences, these actions do not constitute a statutorily protected request for a reasonable accommodation. See Lowmack, 2022 WL 1321385, at *5; see also Johnson v. Walmart, Inc., No. 2:25-cv-858-NAD, 2026 WL 907085, at *4 (N.D. Ala. Apr. 2, 2026) ("[W]ithout more, giving notice of medical difficulties and/or a medical evaluation does not amount to a request for an accommodation for a disability.").

Plaintiffs also broadly state that Mr. Green "complained internally about his treatment relating to his disability," without further detail. (Doc. # 16 at 18). Here again, such vague allegations are insufficient to plead a protected activity. See Wester, 2020 WL 6203530, at *3; see also Curtis v. Delta Air Lines, Inc., No. 8:25-cv-1068-TPB-CPT, 2025 WL 2482659, at *4 (M.D. Fla. Aug. 28, 2025) (dismissing ADA retaliation claim where "Plaintiff does not plausibly suggest causation because she fails to include sufficient factual

material – that is, she fails to identify when, to whom, and how she allegedly lodged reports and complaints about harassment and/or discriminatory treatment").

Because Plaintiffs could potentially cure the deficiencies in this claim by providing further details, Count VI is dismissed with leave to amend.

### G. Defamation

To state a claim for defamation under Florida Law, "the plaintiff must allege: (1) the defendant published a false statement; (2) about the plaintiff; (3) to a third party; and (4) that the falsity of the statement caused injury to the plaintiff." Gov't Emps. Ins. Co. v. AFO Imaging, Inc., No. 8:20-cv-2419-VMC-CPT, 2021 WL 2825949, at *4 (M.D. Fla. July 7, 2021) (citation omitted).

Under Florida law, a statement is per se defamatory if it "tends to injure one in his trade or profession." Id. (citing Alan v. Wells Fargo Bank, N.A., 604 F. App'x 863, 865 (11th Cir. 2015)). These statements "give[] rise to an absolute presumption both of malice and damage" because they are so obviously "damaging to reputation." Alan, 604 F. App'x at 865 (alteration in original) (citation omitted). "To successfully plead a claim for defamation per se, the plaintiff must allege the 'identity of the particular person

to whom the remarks were made with a reasonable degree of certainty' to afford the defendant 'enough information to determine affirmative defenses.'" AFO Imaging, 2021 WL 2825949, at *4 (citation omitted).

Plaintiffs allege that RTI supervisors, including Mr. Cobb and E.J., "created, compiled, and circulated within RTI a false record of safety infractions and disciplinary history attributed to Mr. Green . . . knowing that record to be false or with reckless disregard for its truth." (Doc. # 16 at 11). These statements are alleged to impute to Mr. Green "conduct, characteristics, and a condition incompatible with the proper exercise of his profession as a commercial CDL driver," which "tends to injure him in his trade." (Id. at 11, 21). "RTI is liable for the[se] defamatory statements of its supervisory employees under the doctrine of respondeat superior to the extent the statements were made within the course and scope of their employment." (Id. at 22).

RTI contends that, notwithstanding these allegations, the "Amended Complaint identifies no specific third-party recipient, no specific date of publication, and no precise statement as actually communicated to any third party." (Doc. # 25 at 21-22). In response, Plaintiffs argue that "the recipients by category, including non-supervisory

dispatchers, fellow drivers, administrative and clerical staff, and persons outside RTI" are properly alleged. (Doc. # 27 at 12). The Court agrees with Plaintiffs.

At the pleadings stage, Plaintiffs need only "plead enough facts to state a plausible basis" for their defamation claim. Minsurg Int'l, Inc. v. Frontier Devices, Inc., No. 8:10-cv-1589-VMC-EAJ, 2011 WL 1326863, at *6 (M.D. Fla. Apr. 6, 2011) (dismissing defamation claim where "the complaint fails to allege any facts as to who published the statements, to whom the statements were published, or the time frame within which the statements occurred").

The amended complaint identifies the challenged statements' content, supervisors responsible for compiling and circulating them, an approximate time period within which this occurred, and groups of "persons who did not participate in creating the record" to whom it was circulated. (Doc. # 16 at 9-11). This is sufficient. See AFO Imaging, Inc., 2021 WL 2825949, at *4-5; Williamson v. Digital Risk, LLC, No. 6:18-cv-767-GAP-EJK, 2018 WL 3870064, at *3 (M.D. Fla. Aug. 15, 2018) ("While the Plaintiff does not identify all of those to whom the allegedly defamatory statements were made, she does identify specific groups of people: members of Taylor's teams, Defendants' operations leaders, and the Plaintiff's

former clients. Identifying specific groups of people to whom defamatory statements were published is sufficient; a plaintiff is not required to identify every individual member of each group by name.”).

RTI argues that, even to the extent publication occurred, the allegedly defamatory communications are nonetheless protected by privileges that bar Plaintiffs’ claim. (Doc. # 25 at 19–21). These arguments also fail.

Generally, RTI is correct that, “[w]hen a corporation is accused of defamation, ‘statements made to corporate executive or managerial employees of that entity are, in effect, being made to the corporation itself, and thus lack the essential element of publication.’” Williamson, 2018 WL 3870064, at *4 (quoting Bush v. Raytheon Co., 373 F. App’x 936, 941 (11th Cir. 2010)). But Plaintiffs allege that the challenged statements were made to non-supervisory, non-managerial employees, including “dispatchers, fellow drivers, or administrative and clerical staff.” (Doc. # 16 at 21). Thus, the privilege concerning intra-corporate communications does not bar Plaintiffs’ claims.

A qualified privilege likewise exists under Florida law for communications “made in good faith on any subject matter by one having an interest therein, or in reference to which

he has a duty . . . if made to a person having a corresponding interest or duty." Gills v. Armfield, No. 8:10-cv-895-JDW-TBM, 2011 WL 13175840, at *5 (M.D. Fla. Mar. 30, 2011) (omission in original) (citation omitted). This "qualified privilege does not apply to protect a false statement made with express malice," however. Id.

Because Plaintiffs have plausibly stated a claim for defamation per se, including that RTI published a "false record . . . knowing that record to be false or with reckless disregard for its truth," (Doc. # 16 at 11), malice may be presumed. Alan, 604 F. App'x at 865. Plaintiffs have also pled that RTI acted "with express malice, namely the racial and retaliatory animus alleged above," for the purpose of injuring Mr. Green. (Doc. # 16 at 11).

The Motion is denied as to Count X.

### H. Remaining State Tort Claims

RTI attacks Counts VIII and IX on the basis that they "cannot stand without an actionable underlying tort." (Doc. # 25 at 22-24). But, because Plaintiffs plausibly plead the predicate tort of defamation under Florida Law, these Counts are not due to be dismissed. See Martinez v. Pavex Corp., 422 F. Supp. 2d 1284, 1298 (M.D. Fla. 2006) ("A negligent supervision and retention claim 'must be based on an injury

resulting from a tort which is recognized under common law.'" (quoting Scelta v. Delicatessen Support Servs., Inc., 57 F. Supp. 2d 1327, 1348 (M.D. Fla. 1999)); Food Fair, Inc. v. Anderson, 382 So. 2d 150, 155 (Fla. 5th DCA 1980) (recognizing that the right to recover under loss of consortium exists "wherever such loss is caused by another's wrongful act intentionally inflicted, as for example, a malicious prosecution of the wife, or a defamation of her character").

RTI also argues that Count VIII should be dismissed because "the Amended Complaint does not allege that RTI had prior notice of the supervisors' propensity to defame employees or fabricate safety records." (Doc. # 25 at 23). In Florida, liability for negligent supervision and retention "attaches when an employer (1) knows or should know about the offending employee's unfitness and (2) fails to take appropriate action." Martinez, 422 F. Supp. 2d at 1298 (citation omitted).

Here, Plaintiffs specifically allege that "RTI became aware, or in the exercise of reasonable care should have become aware," of the identified supervisors' "propensity to make false statements of fact concerning employees' safety and disciplinary records and to target Black employees and employees who exercised protected leave rights." (Doc. # 16

at 19). This is supported, Plaintiffs claim, by "the fabrication and circulation of the false record," as well as Mr. Cobb's racially derogatory statements. (Doc. # 16 at 10-11, 19). Taking all allegations in the light most favorable to Plaintiffs, this is sufficient.

The Motion is denied as to the negligent supervision and retention and loss of consortium claims, Counts VIII and IX.

Accordingly, it is hereby

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1) Defendant Restaurant Technologies, Inc.'s Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. # 25) is **GRANTED** in part and **DENIED** in part as set forth herein.

(2) If Plaintiffs wish to amend, they must file their amended complaint within 14 days of this Order.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 29th day of September, 2026.

Virginia M. Hernandez Covington

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE